WMP:JMK:DCP
F. #2016R01428

FILED
CLERK

2016 AUG -4  PM 4:50

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

U.S. ...
EASTERN DISTRICT
OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

TIBOR KLEIN and
ROBERT SCHULMAN,

Defendants.

- - - - - - - - - - - - - - X

**I N D I C T M E N T**

Cr. No.  **CR16       00442**

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18,
U.S.C., §§ 371, 981(a)(1)(C), 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

**WEXLER, J.**

**TOMLINSON, M.J.**

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Indictment, unless otherwise stated:

I.     <u>The Defendants and Relevant Individuals and Entities</u>

1.     The defendant TIBOR KLEIN was a resident of Melville, New York.

From approximately 2001 to the present, KLEIN was the President of Klein Financial Services

("Klein Financial"), a Valley Stream, New York-based financial advisory firm registered with the

United States Securities and Exchange Commission ("SEC").   Klein Financial offered corporate

retirement plan advisory services, wealth management, insurance planning and estate planning to

various customers, including business owners, families and trusts.   Beginning in approximately

1999, KLEIN managed an investment portfolio for the defendant ROBERT SCHULMAN.

2.     The defendant ROBERT SCHULMAN was a resident of McLean, Virginia

and an attorney licensed to practice law in the District of Columbia.   From approximately

December 2000 to December 2013, SCHULMAN served as a partner of an international law firm

(the "Law Firm"), with its headquarters in Richmond, Virginia, and specialized in intellectual property law.

3.       A co-conspirator (the "Co-conspirator"), an individual whose identity is known to the Grand Jury, was a resident of Lake Worth, Florida, and a registered representative of a brokerage firm (the "Brokerage Firm") until approximately March 2012.

4.       John Doe, an individual whose identity is known to the Grand Jury, was an associate attorney at the Law Firm.   While employed at the Law Firm, John Doe was in the litigation group and specialized in intellectual property and patent law.

5.       King Pharmaceuticals Inc. ("King") was a publicly traded pharmaceutical company with its headquarters in Bristol, Tennessee.   Until approximately October 2010, King shares traded on the New York Stock Exchange ("NYSE") under the ticker symbol "KG."

6.       Pfizer Inc. ("Pfizer") was a publicly traded pharmaceutical company with its headquarters in New York, New York.   Pfizer shares traded on the NYSE under the ticker symbol "PFE."

7.       Alpharma Inc. ("Alpharma") was a publicly traded specialty pharmaceutical company with its headquarters in Bridgewater, New Jersey.   Alpharma shares traded on the NYSE under the ticker symbol "ALO."   On or about December 31, 2008, King acquired Alpharma for approximately $1.6 billion.

II.     Relevant Confidentiality Policies

8.       Attorneys employed at the Law Firm, including the defendant ROBERT SCHULMAN, had a duty to maintain the confidentiality of information received in connection with their representation of clients and a duty to refrain from disseminating the information to others for the purpose of securities trading.   Specifically, the Law Firm's investment policy

2

prohibited the dissemination of and trading on material, non-public information ("MNPI") obtained in connection with the Law Firm's representations.

9.    The Rules of Professional Conduct for the District of Columbia Bar, of which the defendant ROBERT SCHULMAN was a member, prohibited the use of "a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person."

III.    The Fraudulent Scheme

10.    In or about and between May 2009 to December 2010, the defendants ROBERT SCHULMAN and TIBOR KLEIN, together with the Co-conspirator and others, engaged in a fraudulent scheme whereby they executed and caused others to execute securities transactions in King based, in whole or in part, on MNPI that was obtained by SCHULMAN in his capacity as an employee of the Law Firm and improperly disclosed to KLEIN and others.

A.    Obtaining the MNPI

11.    On or about November 17, 2008, Alpharma filed a preemptive patent rights suit against Purdue Pharma LP ("Purdue") in the U.S. District Court for the Western District of Virginia over the right to market an opioid painkiller (the "Purdue Litigation").   Following its acquisition of Alpharma in December 2008, King became the party of interest in the Purdue Litigation.   The Law Firm served as counsel of record for King in the Purdue Litigation from approximately May 2009 until on or about July 21, 2010.   Beginning in approximately May 2009, the defendant ROBERT SCHULMAN became actively involved in the Purdue Litigation and remained involved in the case throughout the Law Firm's representation of King.   At least four other attorneys from the Law Firm, including John Doe, represented King in the Purdue litigation.

12.    On or about June 3, 2010, senior representatives of Pfizer approached senior representatives of King about the possibility of a merger of the two entities.   Between

3

approximately June 3, 2010 and July 9, 2010, King and Pfizer engaged in discussions to determine if a merger was possible.   On or about July 9, 2010, King and Pfizer signed a confidentiality agreement and a standstill agreement while they pursued further merger negotiations.

13.   Shortly thereafter, on or about July 12, 2010, attorneys from the Law Firm, including John Doe, learned of the merger discussions between King and Pfizer through their representation of King in the Purdue Litigation.

14.   On or about and between July 12, 2010 and August 4, 2010, John Doe told the defendant ROBERT SCHULMAN of a possible merger between King and Pfizer.

B.   Misappropriating the MNPI

15.   On or about and between August 13, 2010 and August 14, 2010, the defendant TIBOR KLEIN met with the defendant ROBERT SCHULMAN at SCHULMAN's residence in McLean, Virginia.   The purpose of the meeting was to discuss SCHULMAN's and his wife's investment portfolio with SCHULMAN and his wife.   On or about August 13, 2010, during dinner at SCHULMAN's residence, SCHULMAN revealed to KLEIN that there was a pending merger between King and Pfizer.

16.   The next trading day, on or about August 16, 2010, the defendant TIBOR KLEIN purchased 800 shares of King for himself and another 59,800 shares of King for clients of Klein Financial, including 3,000 shares for the defendant ROBERT SCHULMAN.   On or about and between August 18, 2010 and August 24, 2010, KLEIN purchased an additional 950 shares of King in his personal account.   On or about and between August 18, 2010 and September 15, 2010, KLEIN purchased an additional 3,600 shares of King in accounts belonging to clients of Klein Financial.   In sum, on or about and between August 16, 2010 and September 15, 2010, KLEIN

purchased 65,150 shares of King for himself and his clients, including SCHULMAN, for a total of approximately $585,216.

C.   Klein's Further Disclosure of the MNPI to the Co-Conspirator

17.   On or about August 16, 2010, the defendant TIBOR KLEIN also called the Co-conspirator and advised the Co-conspirator that he had MNPI that Pfizer was going to acquire King.   At KLEIN's direction, the Co-conspirator submitted two applications to open options trading accounts at the Brokerage Firm.   The Co-conspirator's applications included a request to expedite processing of the applications.

18.   On or about August 18, 2010, the Co-conspirator and the defendant TIBOR KLEIN spoke on the telephone multiple times.   The same day, the Co-conspirator purchased 2,500 shares of King and 300 call options for King in his or her personal account.   A call option is the right to buy 100 shares of a stock at a predetermined price before a deadline in exchange for a premium.   The Co-conspirator also purchased 2,400 shares of King in an investment account belonging to the Co-conspirator's spouse.

19.   On or about August 19, 2010, the Co-conspirator and the defendant TIBOR KLEIN spoke on the telephone multiple times.   The same day, the Co-conspirator purchased an additional 300 call options for King.

20.   On or about August 23, 2010, the Co-conspirator and the defendant TIBOR KLEIN spoke on the telephone again.   On the same day, the Co-conspirator purchased an additional 75 call options for King.

D.   The Merger Announcement and Subsequent Trading

21.   On or about October 12, 2010, Pfizer's acquisition of King was publicly announced.   After that announcement, the defendant TIBOR KLEIN sold all the King shares he

had acquired for himself and clients of Klein Financial, including the defendant ROBERT

SCHULMAN.   KLEIN made more than $319,000 in profits for his clients, including

approximately $15,500 in profits for SCHULMAN.   KLEIN also garnered a personal profit of

over $8,800.

        22.     On or about October 12, 2010, at the defendant TIBOR KLEIN's direction,

the Co-conspirator exercised all of the unexpired call options in King he or she had purchased and

sold all of the King shares the Co-conspirator had purchased for himself or herself and the

Co-Conspirator's spouse.   The Co-conspirator made over $109,000 in profits.   On or about

November 1, 2010, the Co-conspirator provided $28,000 in profits to KLEIN.   At KLEIN's

request, the Co-conspirator transferred the profits through two checks made payable to KLEIN's

family members.

COUNT ONE
(Conspiracy to Commit Securities Fraud)

        23.     The allegations contained in paragraphs one through 22 are realleged and

incorporated as though fully set forth in this paragraph.

        24.     In or about and between May 2009 and December 2010, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants

TIBOR KLEIN and ROBERT SCHULMAN, together with others, did knowingly and willfully

conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule

10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission,

Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices,

schemes and artifices to defraud; (b) making one or more untrue statements of material fact and

omitting to state material facts necessary in order to make the statements made, in light of the

6

circumstances under which they were made, not misleading; and (c) engaging in one or more acts,

practices and courses of business which would and did operate as a fraud and deceit upon one or

more investors and potential investors in King, to wit: in advance of the public announcement of

the merger between King and Pfizer, the defendants obtained MNPI regarding a transaction

involving King and, based in whole or in part on that information, caused clients of Klein Financial

and others to execute securities transactions in King, directly and indirectly, by use of means and

instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code,

Sections 78j(b) and 78ff.

      25.    In furtherance of the conspiracy and to effect its objects, within the Eastern

District of New York and elsewhere, the defendants TIBOR KLEIN and ROBERT SCHULMAN,

together with others, did commit and cause to be committed, among others, the following:

OVERT ACTS

      (a)    On or about and between July 12, 2010 and August 4, 2010,

SCHULMAN obtained MNPI regarding a potential merger between King and Pfizer.

      (b)    On or about August 13, 2010, SCHULMAN disclosed the MNPI

regarding King to KLEIN.

      (c)    On or about August 16, 2010, KLEIN purchased 800 shares of King

for himself and another 59,800 shares of King for clients of Klein Financial.

      (d)    On or about August 16, 2010, KLEIN spoke to the Co-conspirator

by telephone.

      (e)    On or about August 18, 2010, the Co-conspirator purchased 2,500

shares of King and 300 call options for King in his or her personal account.

(f)     On or about August 19, 2010, the Co-conspirator purchased 300 call options for King in his or her personal account.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT TWO
(Securities Fraud)

26.     The allegations contained in paragraphs one through 22 are realleged and incorporated as though fully set forth in this paragraph.

27.     In or about and between May 2009 and December 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants TIBOR KLEIN and ROBERT SCHULMAN, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in King, to wit: in advance of the public announcement of the merger between King and Pfizer, the defendants obtained MNPI regarding a transaction involving King and, based in whole or in part on that information, caused

8

clients of Klein Financial and others to execute securities transactions in King, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

28.     The United States hereby gives notice to the defendants TIBOR KLEIN and ROBERT SCHULMAN that, upon their conviction of either of the offenses charged in Counts One and Two, the United States will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds traceable to such offenses.

29.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

            (a)      cannot be located upon the exercise of due diligence;

            (b)      has been transferred or sold to, or deposited with, a third party;

            (c)      has been placed beyond the jurisdiction of the court;

            (d)      has been substantially diminished in value; or

            (e)      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

9

seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

10

F. #2013R01993
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

TIBOR KLEIN and ROBERT SCHULMAN,

Defendants.

## INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 371, 981(a)(1)(C), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

A true bill.

_____
Foreperson

Filed in open court this _____ day, of _____ A.D. 20 ___

_____
Clerk

Bail, $ _____

*David C. Pitluck, Assistant U.S. Attorney (718) 254-6108*

11