UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                                  For Online Publication Only
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA

    --against--

                                                **MEMORANDUM &**
                                                **ORDER**
TIBOR KLEIN and                                                16–cr–442 (JMA)
ROBERT SCHULMAN,

                            Defendants.
-----------------------------------------------------------------------X

**Appearances:**

    Wm. Smith Greig
    U.S. Securities and Exchange Commission
    100 F Street Ne
    Washington, DC 20549
    *Attorney for Securities and Exchange Commission*

    Christopher B Mead
    London and Mead
    1225 19th Street NW
    Suite 320
    Washington, DC 20036
    *Attorney for Defendant Schulman*

    Jonathan S. Sack
    Curtis Brett Leitner
    Morvillo, Abramowitz, Grand Iason & Anello P.C.
    565 Fifth Avenue
    New York, NY 10017
    *Attorney for Defendant Schulman*

**AZRACK, United States District Judge:**

    Before the Court is a motion filed by the non-party Securities and Exchange Commission (the "SEC") to quash defendant Robert Schulman's Rule 17 subpoena. Schulman requests production of a number of categories of documents insofar as those documents had not already

been produced by the SEC to the United States Attorney's Office for the Eastern District of New York. Among the requested documents is an SEC Action Memorandum.

With the exception of the requested Action Memorandum, the SEC has represented that it has provided all non-privileged responsive materials either to the United States Attorney's Office or directly to Schulman. The SEC has moved to quash Schulman's subpoena with respect to the Action Memorandum, arguing that the memorandum is protected by a number of legal privileges and that, even were it not privileged, the memorandum would be inadmissible at trial and is therefore not properly the subject of a Rule 17 subpoena. In response, Schulman requested that the Court conduct an in camera review of the Action Memorandum.

The Court ordered the SEC to produce the Action Memorandum for in camera review. After reviewing the Action Memorandum, the Court grants the SEC's motion to quash.

### I. DISCUSSION

For the reasons laid out below, the Court agrees with the SEC that the Action Memorandum is protected by the attorney-client and deliberative process privileges and by the work product doctrine. The Court also concludes that the Action Memorandum would be inadmissible at trial under Federal Rule of Evidence 403 and, therefore, is not properly the subject of a Rule 17 subpoena.

#### A. The Action Memorandum is Privileged in its Entirety

In its motion to quash, the SEC argues that the Action Memorandum is protected by the attorney-client privilege, the deliberative process privilege, the law enforcement privilege, and the attorney work product doctrine. (SEC Mem. at 4–8 (ECF No. 92).) Schulman appears to concede that the memorandum is protected by the work product doctrine. (Schulman Opp. at 10 n.3 (ECF No. 91).) In opposition to the SEC's motion to quash, however, Schulman argues that

2

the attorney-client and deliberative process privileges do not apply to any factual findings contained within the Action Memorandum and that the memorandum is not subject to the law enforcement privilege. (Id. at 4–7.) Because the Court finds that the Action Memorandum is protected by both the attorney-client and deliberative process privileges, it need not determine whether it is also protected by the law enforcement privilege.

The attorney-client privilege protects (1) communications between a client and her attorney that (2) are intended to be, and in fact were, kept confidential, (3) where those communications are made for the purpose of obtaining or providing legal advice. U.S. v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). Documents prepared by attorneys are protected only to the extent that they are, in fact, communications made for the purpose of obtaining or providing legal advice. That is, the attorney-client privilege "extends only to communications and not to facts." Fed. Hous. Fin. Agency v. UBS Americas Inc., No. 11-cv-5201, 2013 WL 1700923, at *1 (S.D.N.Y. Apr. 16, 2013) (quoting Upjohn v. United States, 449 U.S. 383, 395 (1981)).

The deliberative process privilege protects agency documents that (1) are "predecisional" and (2) contain deliberative material. Mr. & Mrs. B v. Bd. of Educ. of Syosset Cent. Sch. Dist., 35 F. Supp. 2d 224, 228 (E.D.N.Y. 1998) (quoting Hopkins v. U.S. Dep't of Hous. & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991)). A document is "predecisional" where it is "prepared in order to assist an agency decisionmaker in arriving at his decision." Id. A document contains deliberative material if its content is "related to the process by which policies are formulated." Id.

Schulman argues that each privilege applies only to the portions of the memorandum that either have the purpose of seeking or providing legal advice or are deliberative in some way. (Schulman Opp. at 4–5.) To the extent the Action Memorandum contains factual findings,

3

Schulman argues that those findings are not protected by either privilege insofar as they are "reasonably segregable" from the portions of the memorandum that either provide legal advice or are deliberative. (Schulman Opp. at 4–5 (citing N.R.D.C. v. Nat'l Marine Fisheries Serv., 409 F. Supp. 2d 379, 384–85 (S.D.N.Y. 2006)).)

In his sur-reply, Schulman appears to argue that, in determining whether any factual findings in the Action Memorandum are privileged, the Court should employ the framework set out by Federal Rule of Evidence 803(8)(A). (Schulman Sur-Reply at 2 (ECF No. 99).) Rule 803(8), however, is entirely unrelated to the attorney-client privilege. Rule 803(8) merely allows the admission of a public record setting out "factual findings from a legally authorized investigation" as an exception of the hearsay rule. Schulman presents no argument in support of his proposed importation of the framework of Rule 803(8) into an analysis of the scope of privilege, and the Court is unaware of any authority supporting such a position. Indeed, Schulman merely conflates the two standards without any further discussion. The Court declines to evaluate the scope of the attorney-client privilege under such a framework.[1] Thus, the Court determines the applicability of the attorney-client privilege to the Action Memorandum based on the well-established case law governing the scope of privilege.

In support of its argument that the Action Memorandum is protected by the attorney-client privilege, the SEC cites to a number of cases in which courts have reached that same conclusion. See SEC v. Merlon, 2012 WL 2568158, * 1 (S.D. Fla. June 29, 2012) (describing an

---

[1] Conflating these distinct areas of law would have troubling implications. For instance, the Supreme Court has held that "factual findings" under Rule 803(8) can encompass "conclusions or opinions that flow from a factual investigation." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 162–163 (1988). If—as Schulman argues—the attorney-client privilege does not apply to "factual findings" under the meaning of Rule 803(8), the legal conclusions and opinions of counsel stemming from a factual investigation would likely not be privileged. Such a rule is contrary to well-established law and would undermine the very core of the attorney-client privilege.

Action Memorandum as "classic attorney-client privilege material"); Feshbach v. SEC, 5 F. Supp. 2d 774, 784 (N.D. Cal. 1997); SEC v. World-Wide Coin Investments, Ltd., 92 F.R.D. 65, 67 (N.D. Ga. 1981). In each of the SEC's cases, the court recognized that the Action Memorandum at issue consisted of a communication between the Commission and its attorneys for the purpose of providing legal advice. The Court finds this conclusion persuasive.

In opposition, Schulman relies on three main cases purportedly standing for the proposition that any "factual findings" in an Action Memorandum are not protected by the attorney-client privilege. For the reasons below, the Court does not find any of Schulman's cited cases persuasive.

Schulman first cites to U.S. v. Gluk, 831 F.3d 608 (5th Cir. 2016). As an initial matter, the Court finds Gluk largely unpersuasive for the reasons laid out in the Court's Order dated February 10, 2017. (See ECF No. 71.) Further, Gluk does not even discuss the issue of privilege and concerns only whether the memoranda at issue were admissible under Rule 803(8). Since the memoranda in Gluk had been "circulated outside the agency," they were not kept confidential so as to preserve any applicable privilege. Gluk, 831 F.3d at 613. For these reasons, Gluk is entirely inapposite.

Next, Schulman cites to U.S. v. Peitz, No. 01-CR-852, 2002 WL 31101681 (N.D. Ill. Sept. 20, 2002). Schulman argues that Peitz "unequivocally held that, while the legal analysis and conclusions contained in the action memorandum were privileged, the agency's findings of fact as reflected in the document were not." (Schulman Opp. at 5.) This is a misstatement of the holding in Peitz.

Although the Peitz court found that a single factual statement in an Action Memorandum would be admissible under Rule 803(8), it did not find that statement to be unprivileged as a

5

matter of law.  Rather, the prosecution in Peitz had apparently waived any claim of privilege with respect to that particular statement by voluntarily disclosed it to the defendant.  Peitz, 2002 WL 31101681, *5.  Despite the voluntary disclosure of that statement, the Peitz court explicitly found that the Action Memorandum itself was privileged and declined to order production of the full memorandum.  Id. at *9.  Since the court in Peitz did not consider whether the previously disclosed factual statement would have been privileged had it not been voluntarily disclosed, Peitz does not support the proposition that factual statements in an Action Memorandum necessarily fall outside the protections of the attorney-client privilege.

Third, Schulman cites to Mr. & Mrs. B v. Bd. of Educ. of Syosset Cent. Sch. Dist., 35 F. Supp. 2d 224, 227 (E.D.N.Y. 1998).  Although Mr. & Mrs. B does not concern an SEC Action Memorandum, it does stand for the proposition that an attorney-client communication is not privileged to the extent that it "merely relays factual information."  Id. at 228.  The Court recognizes this proposition as axiomatic: the attorney-client privilege extends only to communications that have the purpose of providing or obtaining legal advice and does not bar disclosure of a document simply because it is a communication involving an attorney.  See, e.g., United States v. Davis, 132 F.R.D. 12, 15 (S.D.N.Y. 1990); Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 203 (E.D.N.Y.1988).  In other words, an attorney-client communication that relays factual information can be privileged where that information is communicated with the purpose of providing or obtaining legal advice.  Where, on the other hand, a document merely relays information, no privilege attaches.

After conducting an in camera review, the Court finds that the Action Memorandum is protected, in its entirety, by both the attorney-client and deliberative process privileges.  The memorandum was drafted by Enforcement Division attorneys in order to convey legal advice to

the Commission. No portion of the memorandum "merely relays factual information"; the entire memorandum is the privileged and confidential legal advice of counsel. Further, the Action Memorandum was both pre-decisional and deliberative. Indeed, the Action Memorandum contains specific recommendations concerning whether the Commission should pursue future legal action against the subjects of an investigation.

In short, the entire Action Memorandum is protected by the attorney-client privilege. Standing alone, this is sufficient to grant the SEC's motion to quash. The Action Memorandum is also protected by the deliberative process privilege and the work product doctrine and, as discussed below, Schulman cannot overcome either protection. Thus, the Court need not determine whether the Action Memorandum is also protected by the law enforcement privilege.

**B.     Schulman's Legitimate Need Does Not Outweigh the Commission's Interest in Maintaining the Confidentiality of the Action Memorandum**

Even assuming that the attorney-client privilege does not apply, the Court will grant the SEC's motion to quash because Schulman cannot overcome the protections of the deliberative process privilege or the work product doctrine.[2] To the extent that the memorandum is protected by either the deliberative process privilege or the work product doctrine, Schulman argues that "the Commission's interest in maintaining the secrecy of the Action Memorandum is vastly outweighed by Schulman's legitimate interest in its contents."[3] (Schulman Opp. at 9.) The Court disagrees with Schulman's conclusion.

---

[2] Schulman also argues that his "legitimate need" is sufficient to overcome the law enforcement privilege. (See Schulman Opp. at 9.) Because Schulman cannot overcome either the deliberative process privilege or the work product doctrine, the Court need not consider his argument with respect to the law enforcement privilege.

[3] For the first time in his sur-reply, Schulman argues that the attorney-client privilege can be overcome by "a criminal defendant's due process and Sixth Amendment rights." (Schulman Sur-Reply at 2 (citing United States v. Weisberg, No. 08-cr-347, 2011 WL 1327689, at *5 (E.D.N.Y. Apr. 5, 2011)).) As Weisberg, notes, the attorney-client privilege can be overcome—if at all—only in an "exceptional circumstance." Weisberg, 2011 WL 1327689, at *5 (quoting Swidler & Berlin v. United States, 524 U.S. 399, 408 n. 3 (1998)). Schulman does not appear even

As Schulman notes, neither the deliberative process privilege nor the work product doctrine provides absolute protection; each can be overridden "by considerations of fairness and transparency." (Id. (citing E.B. v. N.Y. City Board of Ed., 233 F.R.D. 289, 292 (E.D.N.Y. 2005); Fed. R. Civ. P. 26(b)(3)).)

When considering whether to override the deliberative process privilege, "the court must weigh the various competing interests for and against disclosure." E.B. v. N.Y. City Bd. of Educ., 233 F.R.D. at 292. Among the factors to be weighed are:

> 1) the relevance of the evidence to be protected; 2) the availability of other evidence; 3) the "seriousness" of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Id.; see also In re Franklin Nat. Bank Sec. Litig., 478 F. Supp. 577, 583 (E.D.N.Y. 1979).

When considering whether to override work product protection, a court must determine whether the party requesting disclosure "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P 26(b)(3)(A)(ii).

Schulman's argument for disclosure is based on his "belie[f] that the Action Memorandum contains probative, exculpatory factual findings regarding his state of mind." (Schulman Opp. at 10.) Schulman also argues that he "does not have access to any other documents reflecting the SEC's factual findings pursuant to its investigation." (Id.) With respect to the SEC's interest in protecting the confidentiality of the Action Memorandum, Schulman argues that "the Commission has disclosed the substance of its legal theories in its complaint in the Civil Action" and that "the Commission provides no basis for its conclusory

---

to argue that such circumstances exist here. In any event, the Court finds that no such circumstances exist and that Schulman is thus unable to overcome the attorney-client privilege.

assertions that disclosing the Action Memorandum could 'inhibit[] . . . the fullness and frankness of written expression among the Commission and its staff members' or 'allow people to take measures to frustrate or impede future investigations.'" (Id. at 11.)

Having reviewed the Action Memorandum in camera, the Court concludes that Schulman has not demonstrated a need sufficient to overcome either the deliberative process privilege or the work product doctrine. Without disclosing the contents of the Action Memorandum, the Court can confirm that the memorandum does not contain the types of "probative, exculpatory factual findings" that Schulman is surely hoping to unearth. In light of the disclosures that have already been provided to Schulman, he has little, if any, legitimate need for the Action Memorandum and cannot demonstrate that any such need is sufficient to overcome the protections of the work product doctrine or deliberative process privilege.

### C. The Action Memorandum Would Be Inadmissible at Trial

Finally, even were the Court to find that the Action Memorandum was not protected by any privilege, the memorandum would be inadmissible at trial for many of the same reasons that the SEC complaint and charging decision are inadmissible, as discussed in the Court's Order dated February 10, 2017. (See ECF No. 71 at 15–19, n.6.) Because Schulman is required to demonstrate the admissibility of requested documents as a necessary "hurdle" to a Rule 17 subpoena, the inadmissibility of the Action Memorandum renders it an inappropriate subject of such a subpoena. See United States v. Nixon, 418 U.S. 683, 700 (1974).

Schulman focuses his argument in favor of admissibility on Rule 803(8), arguing that the Action Memorandum is admissible as the "factual findings" of the Commission. Even assuming that the Action Memorandum were admissible under Rule 803(8), however, it would be inadmissible under Federal Rule of Evidence 403 because its probative value is substantially

outweighed by a danger of unfair prejudice and confusion. Were Schulman permitted to present the Action Memorandum to the jury, the jury would essentially be asked to determine whether the SEC or DOJ "got it right." This would divert the jury from their proper role, which is to determine whether the government's evidence at trial proves Schulman's guilt beyond a reasonable doubt. Further, the fact that the SEC and DOJ conducted separate investigations and made their decisions based on different bodies of evidence would heighten the jury's confusion if forced to compare the two decisions.

In short, the Action Memorandum would be inadmissible at trial under Rule 403 and, therefore, Schulman cannot obtain it via a Rule 17 subpoena.

## II. CONCLUSION

For the reasons stated above, the SEC's motion to quash Schulman's subpoena is hereby granted with respect to the requested Action Memorandum.

**SO ORDERED.**

Date: February 28, 2017
Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge