UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
UNITED STATES OF AMERICA

    --against--

TIBOR KLEIN and
ROBERT SCHULMAN,

                  Defendants.
----------------------------------------------------------------------X

FILED CLERK
12:16 pm, Mar 01, 2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

For Online Publication Only

**MEMORANDUM & ORDER**
16–cr–442 (JMA)

**Appearances:**

    David C. Pitluck
    Julia Nestor
    U.S. Attorney's Office/EDNY
    271 Cadman Plaza East
    Brooklyn, NY 11201
    *Attorneys for the United States*

    Christopher B. Mead
    London and Mead
    1225 19th Street NW
    Suite 320
    Washington, DC 20036
    *Attorney for Defendant Schulman*

    Jonathan S. Sack
    Curtis Brett Leitner
    Morvillo Abramowitz Grand Iason & Anello P.C.
    565 Fifth Avenue
    New York, NY 10017
    *Attorneys for Defendant Schulman*

**AZRACK, United States District Judge:**

Before the Court are the government's motion to preclude defendant Schulman from introducing evidence of statements that Schulman had made in April 2011 in response to an inquiry from the Financial Industry Regulatory Authority and the government's motion providing notice of its intention to introduce certain of Schulman's prior out-of-court statements

1

pursuant to Federal Rule of Evidence 801(d)(2)(A). In response, Schulman asserts that certain of his other out of court statements are admissible under Federal Rule of Evidence 106 in the event that the government's proffered statements are admitted.

For the reasons below, the Court (1) defers ruling on the admissibility of Schulman's statements in response to the April 2011 inquiry by the Financial Industry Regulatory Authority; (2) grants the government's request to introduce Schulman's out of court statements; and (3) grants in part and denies in part Schulman's request for the admission of additional statements pursuant to Federal Rule of Evidence 106.

## I. DISCUSSION

### A. The Court Defers Ruling on the Admissibility of Schulman's April 2011 Statements

At oral argument on January 26, 2017, Schulman's counsel indicated his intention to introduce certain of Schulman's statements into evidence at trial. After oral argument, the government moved to preclude the admission of these statements, describing them as "a series of self-serving exculpatory statements made in April 2011 in response to an inquiry from" the Financial Industry Regulatory Authority. (Gov't FINRA Mem. at 1 (ECF No. 60).)

Schulman asks the court to defer ruling on the admissibility of the challenged statements, arguing that admissibility should be determined when and if Schulman seeks to introduce the statements at trial. (Schulman Opp. re: FINRA Statements (ECF No. 68).) Schulman indicated that he intends to seek the admission of these statements only if he decides to testify, in which case he will likely argue that the statements are admissible either as a "statement of the declarant's then-existing state of mind" or in order to rehabilitate his credibility after the government's cross-examination. (Id. at 1.) Schulman argues that the question of admissibility under either theory would "involve a fact-specific inquiry in the context of Schulman's

testimony and arguments at trial by both sides." (Id.)

Although the government has presented compelling arguments against admissibility, the Court agrees with Schulman and defers ruling until the issues arises during trial. (See Gov't FINRA Reply (ECF No. 75).) The admissibility of the challenged statements will turn on the manner in which the trial progresses and, without knowing the precise context in which Schulman will seek to introduce the statements, the Court is unable to determine their admissibility.

**B.  Schulman's Statements to the SEC and the U.S. Attorney's Office for the Eastern District of New York are Admissible**

The government has also provided notice of its intention to introduce certain statements made by Schulman to the Securities and Exchange Commission ("SEC") and to the U.S. Attorney's Office for the Eastern District of New York ("EDNY"). (Gov't Statements Mem. 1 (ECF No. 61).) In response, Schulman agreed that, "if relevant and not presented in a misleading or prejudicial manner, the government may introduce Schulman's testimony before the SEC and his interview with the EDNY as statements made by a party opponent." (Schulman Statements Opp. at 1 (ECF No. 69).)

Despite his general acquiescence to the admission of his statements, Schulman argues that certain questions posed to him by the SEC constitute inadmissible hearsay. (Id. at 13–14.) In particular, Schulman argues that certain questions are phrased in such a way as to "creat[e] a misleading impression that Schulman knew more than he did." (Id. at 14.) Schulman requests that certain questions be "rephrased" in order to cure this purported hearsay issue, and requests that certain other questions and answers be excluded entirely because they "add nothing." (Id.)

The Court disagrees with Schulman's contention that the SEC's questions constitute hearsay. The designated statements will be admitted only for the truth of the matters asserted by

3

Schulman; the statements are not admitted for the truth of the SEC's questions. Schulman's objection is thus overruled, and all of Schulman's prior statements designated by the government are admissible at trial. Schulman may request an appropriate limiting instruction at the time that the statements are admitted.

C.  **Portions of Schulman's Counter-Designations Are Admissible**

Schulman also argues that certain of his other out-of-court statements are also admissible pursuant to Federal Rule of Evidence 106. (Id.) The government argues that all of Schulman's counter-designations fall outside the scope of Rule 106 and, therefore, are inadmissible.

Pursuant to Rule 106, a party may introduce "any other part" of an admitted statement, or "any other writing or recorded statement," that "in fairness ought to be considered at the same time." As the Second Circuit has recognized, "even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007) (quoting United States v. Castro, 813 F.2d 571, 575–76 (2d Cir. 1987)).

As relevant here, the "doctrine of completeness applies to a defendant's exculpatory statements where their exclusion would unfairly distort the meaning of the declarant's non-hearsay statements that are in evidence." United States v. Walia, No. 14-cr-213, 2014 WL 3734522, at *8 (E.D.N.Y. July 25, 2014). This doctrine does not, however, "require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999). Thus, "the Second Circuit has excluded exculpatory statements that do not specifically explain the admitted statements."

4

Walia, 2014 WL 3734522, at *8 (citing United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010).

Applying this principle, the Court finds that some, but not all, of Schulman's counter-designations are admissible under Rule 106. To the extent that certain counter-designations are not admissible, this is so because the counter-designated statement is too far removed from the admitted statements and, as such, is not necessary "to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." See Johnson, 507 F.3d at 796.

The Court's decision with respect to each of Schulman's counter-designations is laid out below. Where the counter-designation is inadmissible in its entirety, the Court does not reproduce the statement. Where, however, only portions of the counter-designation are admissible, the Court has reproduced the full statement. Portions of each statement designated for admission by the government—all of which are admissible at trial—are reproduced in **bold** font. Portions of Schulman's counter-designation that the Court has determined are admissible are reproduced in <u>underlined</u> font. Portions of Schulman's counter designation that are inadmissible are reproduced in ordinary font.

a. **Schulman Counter-Designation 1**

Schulman's Counter-Designation 1 is admissible in part and inadmissible in part, as indicated below:

> **Q: Did you tell anyone about any knowledge you had regarding a potential merger or acquisition of King Pharma?**
>
> **A: No, I never told anybody. The best I can think of that I did, and I've been trying to think about this, is there was one evening when Mr. Klein was at my house where I did mention,** <u>and I kind of made a joke with him,</u> **boy, it would be nice to be king for a day**<u>, and I made some joke with him about that.</u>

5

And I'll be honest with you, I think I'd been drinking quite a bit of wine that night and I made some kind of oblique reference to that and that would really be the sum total of everything I could have told anybody.

<u>And, at that point, I would have never told him anything about their meeting, there's a potential merger, it would have been much more of in the nature of hey, wouldn't it be great to be a king for a day, ha, ha, ha, kind of like telling him – like acting like I'm a big shot and I know this thing, but that's the extent of what I would have communicated to him.</u>

b. **Schulman Counter-Designation 2**

Schulman's Counter-Designation 2 is inadmissible in its entirety.

c. **Schulman Counter-Designation 3**

Schulman's Counter-Designation 3 is inadmissible in its entirety.

d. **Schulman Counter-Designation 4**

Schulman's Counter-Designation 4 is inadmissible in its entirety.

e. **Schulman Counter-Designation 5**

Schulman's Counter-Designation 5 is admissible in part and inadmissible in part, as indicated below:

> **Q: At some point, did you become aware of a potential acquisition or merger of King Pharma with Pfizer.**
>
> **A: Yes.**
>
> **Q: How did you learn of the potential merger?**
>
> **A: There is an associate at my firm named David Kelly and he attended a meeting with a partner in my firm name Tom Slater and they went up to New York and I think – I think Mr. Klein, Chris Klein, was there also where King met with people from Pfizer who were never identified to me to talk about a possible deal.** <u>That's pretty much the extent I know.</u>
>
> <u>I did not know the deal was imminent, I did not know was if it a deal simply to take over this particular case, this particular technology or was it a much larger deal than that. I really did not have a sense of that. I knew they were talking to each other.</u>
>
> **Q: When did you – sorry.**

> A: I'm sorry. And I knew that a deal was possible.
>
> **Q. And when did you learn of a possible deal between King Pharma and Pfizer?**
>
> **A.** Oh, Lord. And I knew you were going to ask that. **I don't remember. I can only tell you it would be something very easy to verify because David Kelly went up to New York for that meeting and it was within a couple of days of that meeting that I would have had the phone conversation with him. I think I spoke to him right after he got back from New York.**
>
> <u>Q. Did you work on any aspect of that deal?</u>
>
> <u>A. No, I did not.</u>
>
> <u>Q. None of the due diligence, none of the—</u>
>
> <u>A. No</u>

　　f. **Schulman Counter-Designation 6**

Schulman's Counter-Designation 6 is inadmissible in its entirety.

　　g. **Schulman Counter-Designation 7**

Schulman's Counter-Designation 7 is admissible in part and inadmissible in part, as indicated below:

> **Q: Sorry. Okay, so Mr. Kelly is a litigator in Atlanta and you were describing to me that he called you up on the telephone because –**
>
> **A: Correct.**
>
> **Q: -- you're a litigator in Washington, D.C.?**
>
> **A: Well, I'm more a prep and pros and counseling guy. I'm more the patent nerd that helps the litigators.**
>
> **Q: So he calls you, Mr. Kelly?**
>
> **A: Yes.**
>
> **Q: And about when was that?**
>
> **A: It would have been, as I told you earlier, it would have been a day or two at most, after he was up in New York at that meeting between Pfizer and King.**

**Q: Did you know who the meeting was taking place between? I mean, do you know who was involved in the meeting?**

**A: Yes, I did know it was Pfizer and King.**

**Q: Was there anyone else involved besides Pfizer and King?**

**A: Not to my knowledge.**

<u>Q: And what did you understand the purpose of the meeting to be?</u>

<u>A: To discuss, as I said earlier, I knew – the one fact I knew is they were interested in the technology that was subject of the litigation, and I knew that because that's why David had to be up there to answer questions about the litigation. So I knew for certain that they were interested in that particular technology of King's. Beyond that, I did not – did I know that an acquisition was in that spectrum of possibilities? I definitely knew that. But again, I did not know if it was just that technology versus the whole enchilada and I didn't know were they at the early stages, were they at the later stages. Because I've seen patent diligences where the patent come in in the beginning and I've seen – some people people's philosophy is the patents can kill it, so let's do it at the beginning and some people's philosophy is the patents can kill it, so let's do it at the end.</u>

Q: So what was Hunton & Williams' role at that meeting?

A: Well, I wasn't at the meeting and David didn't go into any detail beyond just a couple of those statements, so I'm not really sure, but I'm assuming it was because Pfizer wanted to hear from King's counsel what Hunton & Williams' assessment was of the merits of the case.

h. **Schulman Counter-Designation 8**

Schulman's Counter-Designation 8 is inadmissible in its entirety.

i. **Schulman Counter-Designation 9**

Schulman's Counter-Designation 9 is admissible in part and inadmissible in part, as indicated below:

**Schulman was asked to discuss the point at which he learned about the potential merger of Pfizer and King. Schulman stated that he first learned of this when he received a telephone call from Dave Kelly, but is not sure when the call took place. Schulman explained that Kelly and Tom Slater had traveled to NYC to attend a meeting at which patent attorneys for Pfizer and King were present. Sometime shortly after this meeting—Schulman estimated within a few weeks of the meeting—Kelly called him to say that the meeting had taken place.**

. . .

With regard to the meeting between Pfizer and King that Kelly described to him in 2010, SCHULMAN stated he was not completely sure that it meant a merger was going to ensue. SCHULMAN described the King settlement discussions and a potential merger involving King as "each in their own universe."

AUSA Paes asked SCHULMAN to explain why Pfizer, an unrelated party to the King litigation, would have its patent attorneys meeting with King. SCHULMAN said that he is not sure but surmised that Pfizer may've been interested in a produced or branch of King. SCHULMAN admitted, however, that he knew Pfizer was interested in the outcome of King's pending litigation.

SCHULMAN further admitted that he recognized, at the time, that a merger between Pfizer and King was not out of the realm of possibility. SCHULMAN added, however, that during his career he has seen a lot of potential mergers fail so he was not certain about one between Pfizer and King.

When asked whether he knew at the time that the Pfizer/King talks were about either a full merger or a partial sale (product/segment), SCHULMAN said, yes.

SCHULMAN was asked about the number of viable product lines owned by King. SCHULMAN stated that Alpharma owned at least two significant products while King owned a few as well. He said that he is not sure exactly how many product lines King owned after it acquired Alpharma.

**With regard to Schulman's knowledge that Pfizer and King were discussing either a full merger or partial sale, he admitted that he possessed this information before he met with Tibor Klein at his residence in August 2010.**

**Schulman was asked whether he followed up on the status of the Pfizer/King negotiations after speaking with Kelly about it in 2010. Schulman said that he did not but recalled that Kelly did tell him to keep this information confidential. Schulman affirmed that this directive gave him reason to believe that a merger was possible.**

**When asked why Kelly called him to report this meeting, Schulman said that the two of them were close and that Kelly called him "as a friend" to report what had happened.**

. . .

**With regard to his relationship with Kelly, Schulman said that he hired Kelly in 2003 to work in Hunton and William's ("H&W") office in Washington D.C. and that the two of them became friends. Kelly transferred to H&W's Atlanta office in or about 2007-2008. In 2010, Schulman said that he and Kelly were still friends who occasionally had personal conversations.**

**j. Schulman Counter-Designation 10**

Schulman's Counter-Designation 10 is inadmissible in its entirety.

**k. Schulman Counter-Designation 11**

Schulman's Counter-Designation 11 is inadmissible in its entirety.

**l. Schulman Counter-Designation 12**

Schulman's Counter-Designation 12 is inadmissible in its entirety.

**m. Schulman Counter-Designation 13**

Schulman's Counter-Designation 13 is inadmissible in its entirety.

**n. Schulman Counter-Designation 14**

Schulman's Counter-Designation 14 is inadmissible in its entirety.

**o. Schulman Counter-Designation 15**

Schulman's Counter-Designation 15 is inadmissible in its entirety.

### III. CONCLUSION

For the reasons above, the Court (1) defers ruling on the admissibility of Schulman's statements in response to the April 2011 inquiry by the Financial Industry Regulatory Authority; (2) grants the government's request to introduce Schulman's out of court statements; and (3) grants in part and denies in part Schulman's request for the admission of additional statements pursuant to Federal Rule of Evidence 106, as indicated herein.

**SO ORDERED.**

Date: March 1, 2017
Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge